**The Honorable David N. LEVINSON, Insurance Commissioner of the State of Delaware, Defendant Below, Appellant,**

v.

**FIRST DELAWARE INSURANCE COMPANY, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: July 19, 1988.
Decided: Oct. 17, 1988.

---

Regina M. Mullen and David W. Lynch, Deputy Attys. Gen., Wilmington, for appellant.

Grover C. Brown, Morris, James, Hitchens & Williams, Wilmington, for appellee.

Before CHRISTIE, C.J., and HORSEY and MOORE, JJ.

HORSEY, Justice:

In a declaratory judgment action, the Superior Court granted summary judgment in favor of First Delaware Insurance Company ("First Delaware") and against the Delaware Insurance Commissioner ("Commissioner"). The Superior Court in a bench ruling held that the Commissioner had no authority: (1) to require First Delaware to have paid-in capital and free surplus greater than that required by 18 *Del.C.* § 511(a) before it could qualify for the issuance of a certificate of authority to transact insurance; or (2) to refuse to issue a certificate of authority to transact insurance to First Delaware because the capitalization reflected in its application failed to meet a minimum capitalization required by the Commissioner which was in excess of the statutory minimum required by 18 *Del. C.* § 511(a).

On appeal, the Commissioner argues that the broad regulatory powers granted to him by statute to regulate going companies confers upon him an implied authority to require a new insurer to commence business with a greater amount of initial capital and surplus than the minimum requirement of 18 *Del.C.* § 511(a). This must be so, the Commissioner argues, because of his overriding duty to require of every insurer, new or already in business, that it be of sound condition, apart from the adequacy of its capital. We cannot agree with either the Commissioner's construction of the statute or his reasoning.

We conclude that section 511 leaves no room for construction and must be given its plain meaning. The General Assembly has thereby unambiguously established the minimum capitalization requirements for a new insurer to be granted a certificate of authority to transact business under Title 18 and applicable regulations of the Department. The Commissioner is without authority to require of an applicant for a certificate of authority a greater level of capitalization than the minimum levels specified in section 511(a). Therefore, we affirm.

I

In August 1987, First Delaware submitted to the Commissioner an application for a certificate of authority to transact insurance as a multiple line stock insurer. Under 18 *Del.C.* § 511(a), a multiple line stock insurer is required to possess and maintain unimpaired paid-in capital stock of not less than $500,000 and possess a free surplus of not less than $250,000. Thus, in order to transact insurance, the combined paid-in capital stock and free surplus for a stock multiple line insurer must be not less than $750,000. In its application for a certificate of authority, First Delaware submitted to the Commissioner that it would exceed the statutory minimums by possessing and maintaining paid-in capital of $500,-000 and by possessing a free surplus of $300,000.

In early November 1987, First Delaware's counsel was advised by the Deputy Commissioner that First Delaware's application for a certificate of authority would not be granted. The reason given was that the capitalization set out in First Delaware's application did not meet the $1 million minimum capitalization imposed by the Commissioner.

In response, First Delaware filed a mandamus action in the Superior Court to require the Commissioner to grant First De-

laware a certificate of authority. The Commissioner countered by filing a motion to dismiss. First Delaware then moved for summary judgment. At argument on the several motions, the parties agreed that First Delaware should file an amended complaint, withdraw its mandamus prayer for relief, and seek instead a declaratory judgment. Following answer and cross-motions for summary judgment on affidavits, Superior Court, on February 11, 1988, granted judgment in favor of First Delaware and against the Commissioner.

## II

On appeal, our standard of review is whether the court below erred in formulating or applying legal precepts. *Rohner v. Niemann,* Del.Supr., 380 A.2d 549 (1977). The scope of review is the paper record in the court below. *Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del.Supr., 445 A.2d 927 (1982). The issue on appeal involves the interpretation of a statute, section 511(a) of Title 18. The question presented is whether under the language of section 511 the Commissioner may refuse to issue a certificate of authority to an otherwise qualified applicant whose proposed initial capitalization exceeds the minimum requirements of section 511(a). The Commissioner construes section 511(a) as incorporating authority conferred upon the Commissioner under section 520(b) to suspend or revoke an insurer's certificate of authority for "unsound condition." The Commissioner then concludes that First Delaware would be of unsound condition to commence business without $1 million of minimum capitalization "in today's economic climate."

First Delaware contends that the plain language of section 511(a) must be read as depriving the Commissioner of any discretion to refuse to issue a certificate of authority to an otherwise qualified applicant whose initial capitalization meets or exceeds the minimum capitalization requirements of section 511(a). First Delaware also argues that the suspension and revocation provisions of sections 519 and 520, and in particular the unsound condition sanction of section 520(b), cannot be read into

section 511(a) based on the plainly different purposes served by section 511(a) and 511(a)(2). We find First Delaware's construction of the contrasting purposes of section 511(a) and section 511(a)(2) to be clearly correct and to preclude the Commissioner from applying an "unsound condition" test to require of an insurer applicant an initial capitalization in excess of the minimum requirements of section 511(a).

\* \* \* \* \* \*

The duty of a court in construing a statute is to ascertain and give effect to the intent of the General Assembly as expressed in the language of the statute. *Giuricich v. Emtrol Corp.,* Del.Supr., 449 A.2d 232 (1982). Where the language of the statute is clear, unequivocal and unambiguous, there is no room for statutory construction, and the statute must be construed to mean what it clearly says. *Trans–American Airlines, Inc. v. Kenton,* Del.Supr., 491 A.2d 1139 (1985). "If a statute is unambiguous, the court's role is 'limited to an application of the literal meaning of the words.'" *Daniels v. State,* Del. Supr., 538 A.2d 1104, 1109 (1988), *quoting Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* Del.Supr., 492 A.2d 1242, 1246 (1985). "If a statute is ambiguous, the court must resolve the ambiguity by reconciling its language with the legislative intent." *Daniels,* 538 A.2d at 1109. Application of those elemental principles of statutory interpretation requires us to reject the Commissioner's position.

■ The language of 18 *Del.C.* § 511(a) is clear, unequivocal and unambiguous. The relevant part of section 511(a) provides:

(a) To transact any one kind of insurance . . . as shown below, an insurer shall possess and thereafter maintain unimpaired paid-in capital stock (if a stock insurer) . . . , and when first so authorized shall possess free surplus, all in amounts not less than as follows:

| Kind or kinds of insurance | Stock insurers | |
|---|---|---|
| | Capital stock | Free surplus |
| * | * | * |
| Multiple line | 500,000 | 250,000 |
| * | * | * |

* Except: * * *

(2) An insurer which otherwise possesses funds as required under subsection (a) above, shall at all times maintain policyholders' surplus (combined paid-in capital stock, if any, and surplus) reasonable in amount, as determined by the Commissioner, in relation to the kinds and amount of insurance it has in force, or being written and retained by it, net of applicable reinsurance.

The language of section 511(a) and, in particular, the words "when first so authorized shall possess free surplus, all in amounts not less than ...," can only be interpreted to be a legislative direction to the Commissioner setting initial minimal capitalization requirements for a stock insurer to transact insurance in Delaware. However, in contrast with the legislative mandate of section 511(a), subsection (2) of section 511(a) confers upon the Commissioner discretionary authority to control the level of capital funds that an insurer, once licensed, shall, in the course of doing business, be required to "maintain." The authority thereby conferred upon the Commissioner is both flexible and broad, being expressed in terms of "reasonable[ness] in amount" in relation to an insurer's business.

The contrast in language between the authority withheld from the Commissioner under section 511(a) and the authority conferred upon the Commissioner under subsection (2) evidences the drawing by the Legislature of a sharp line between retained legislative prerogative under section 511(a) and delegated administrative, and hence discretionary, authority conferred under section 511(a)(2). Sections 519 and 520 complement the latter by providing the Commissioner with the enforcement powers necessary to exercise effectively the administrative authority conferred under subsection (2) of section 511(a). Section 519 confers upon the Commissioner on stated mandatory grounds authority to "refuse to continue or [to] suspend or revoke an insurer's certificate of authority." Section 520 confers on the Commissioner the discretion to "refuse to continue or [to] suspend or revoke an insurer's certificate of authority" on discretionary and special grounds stated. In each instance, however, the Commissioner must, with limited exceptions, find, after due notice and hearing, grounds for suspension or revocation of an insurer's certificate of authority, one ground being "unsound condition" under section 520(b)(1).[1]

We think it clear that the Commissioner's power to suspend or revoke an insurer's certificate of authority for "unsound condition" is only exercisable by the Commissioner in the performance of his delegated administrative duties conferred under subsection (2) of section 511(a) and only as to insurers already licensed. The Commissioner's power to suspend on this stated ground may not reasonably be read into section 511(a) and invoked by the Commissioner as a ground for withholding the issuance of a certificate of authority to an otherwise qualified applicant whose proposed initial capitalization exceeds the minimum requirements of section 511(a). To adopt the Commissioner's construction of section 511(a) would render meaningless the "not less than" above-quoted language of section 511, remove any legislative guidelines over the issuance of certificates of authority, and clothe the Commissioner with unbridled authority over the future licensing of both stock and mutual insurers.

* * * * * *

AFFIRMED.

---

1. 18 *Del.C.* § 520(b)(1) provides in pertinent part:

(b) The Commissioner shall suspend or revoke an insurer's certificate of authority on any of the following grounds, if he finds after a hearing thereon that the insurer:

(1) Is in unsound condition, or is being fraudulently conducted, or is in such condition or using such methods and practices in the conduct of its business as to render its further transaction of insurance in this State currently or prospectively hazardous or injurious to policyholders or to the public. ...