PETE BALMA and INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation, Plaintiffs Below, Appellants, v. TIDEWATER OIL COMPANY, a corporation of the State of Delaware, Defendant Below, Appellee.

(*November* 9, 1965)

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

*James P. D'Angelo* and *Stanley T. Czajkowski,* for plaintiffs below, appellants.

*Rodman Ward Jr.,* and *Richard I. G. Jones,* of Prickett & Prickett, for defendant below, appellee.

Supreme Court of the State of Delaware, No. 48, 1965.

HERRMANN, Justice.

The question on this appeal is whether the Delaware Scaffolding Statute, 16 *Del. C.* Sec. 7701(a),* is applicable in this case.

The facts, viewed in the light most favorable to the plaintiffs, are these:

The plaintiff, Pete Balma, was an employee of Catalytic Construction Company (hereinafter "Catalytic") which had a contract with the defendant Tidewater Oil Company (hereinafter "Tidewater") for repair and maintenance work at the latter's plant. The contract provided that Tidewater "may furnish for work to be performed by Catalytic hereunder all equipment, apparatus, * * * tools * * * and major and minor items of construction equipment." Catalytic agreed to "maintain in good order, repair and condition" all equipment furnished by Tidewater. Tidewater made certain ladders, tools, and equipment available to Catalytic under the contract. While working as an employee of Catalytic, Balma used one of the ladders so provided, fell, and was seriously injured. The ladder, an extension type, telescoped because it was defective, causing the fall. Balma was assigned to, and supervised in,

---

*16 *Del. C.* Sec. 7701(a) provides:
  "Sec. 7701. Scaffolding regulations
  "(a) A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

the work by his foreman, also a Catalytic employee. The tools and equipment furnished by Tidewater, including the ladder involved in the accident, were stored in a Tidewater tool shed, but were selected and issued by a Catalytic employee.

As an employee of Catalytic, Balma sought and received workmen's compensation benefits for the injury caused by the fall. Catalytic's workmen's compensation insurance carrier, Insurance Company of North America, joined Balma as party plaintiff in this third-party action, under 19 *Del. C.* Sec. 2363(a). In addition to allegations of breach of common law duties, the complaint charges breach of statutory duty under Sec. 7701(a), as follows:

"The Defendant failed to comply with the non-delegable duties to provide a ladder in a reasonable safe condition in violation of 16 *Del. Code,* Sec. 7701(a)."

Tidewater moved to strike the allegation and, after discovery, the motion was treated as one for partial summary judgment. The Superior Court held that Sec. 7701(a) had no application to Tidewater under the facts of this case, and granted partial summary judgment in the defendant's favor. The plaintiffs appeal.

The plaintiffs concede that they must show that Balma was employed by Tidewater and was under Tidewater's direction in order for the Statute to have application to Tidewater; but the plaintiffs contend that, under a proper interpretation of the Statute, such employment and direction appear from the above facts.

The only evidence presented shows that Balma was employed by Catalytic; that there was no relationship between Balma and Tidewater; that Balma was assigned to, and supervised in, his work by another employee of Catalytic who, in turn, had no relationship to Tidewater. There is no showing of privity of any kind between Balma and Tidewater, or that any officer, employee, or agent of Tidewater had any connection with the assignment or supervision of Balma's work, or with the issuance of the ladder from the tool shed. Moreover, Catalytic had the duty under the contract to maintain the ladder "in good order,

repair and condition."

The plaintiffs argue, nevertheless, that, because Sec. 7701(a) is a workmen's safety statute, a liberal construction of the statutory language is appropriate; that, liberally construed, the word "employing" may not be confined to a master-servant relationship and the word "directing" may not be limited to actual control and supervision of the work; that, under such liberal construction, Tidewater "directed" Balma to perform the work by virtue of its contract with Catalytic.

We find the plaintiffs' proposition unacceptable. The language of the Statute is clear, we think, and its meaning beyond doubt. Words in a statute must be given ordinary meaning. Courts have discretion to construe statutes only when they are obscure or doubtful in their meaning. Where its language is clear and unambiguous, a statute must be held to mean that which it plainly states, and no room is left for construction. *Rash v. Allen, 1 Boyce 444, 76 A. 370 (1910); Beck v. Lund's Fisheries, Inc.,* 3 Storey 45, 164 A.2d 583 (1960).

The ordinary meaning of the word "employing" does not permit a finding, under the uncontroverted evidence before us, that Tidewater employed Balma. Similarly, the ordinary meaning of the word "directing" does not permit a finding, under the uncontroverted evidence before us, that Tidewater directed Balma either to use the ladder or how to use it. Any such conclusion would be unreasonable, we think, and would require an unwarranted stretching of the language of the Statute. It is our opinion, therefore, that Sec. 7701(a) is inapplicable to Tidewater under the facts of this case. Compare *Miller v. Weinberg,* Del. Super., 190 A.2d 27 (1962).

The plaintiffs rely upon *Quigley v. Thatcher,* 207 N.Y. 66, 100 N.E. 596 (1912) and *Galbraith v. John B. Pike & Son, Inc.,* 18 A.D.2d 39, 238 N.Y.S.2d 263 (1963). They make the point that these cases are entitled to more than usual weight because the pertinent language in our Statute, enacted in 1917, is the same as that in the New York Statute, enacted in 1897.

The early Quigley case supports the plaintiffs' position; but we cannot follow it. That case held that when a contractor constructs a scaffold so that his sub-contractor must of necessity, or for reasonable convenience in the work, use it, the contractor may be held to have anticipated such use and to have assumed liability to the sub-contractor and his employees for the safety of the scaffold. It appears to us that, although grounded on the Statute, Quigley was decided upon common law principles rather than upon established rules of statutory construction; that broadening the statutory language to such extent amounts to judicial legislation.

As to Galbraith,—holding that a contract to furnish scaffolding to an independent contractor amounted to a direction to use it—insofar as that case may be contrary to the view we here adopt, we think it also contrary to the prevailing view of the New York Court of Appeals, last expressed in *Kluttz v. Citron,* 2 N.Y.2d 379, 161 N.Y.S. 2d 26, 141 N.E.2d 547 (1957):

"The words 'employing or directing another to perform * * *' mean just that. Here the parties stipulated that this painter was engaged as an independent contractor. Nowhere does it appear, and it is not claimed, that this defendant at any time gave the plaintiff any instructions or directions as to the manner or method in which he was to perform the painting which he had contracted to do, but it was left solely to his judgment and experience. * * *."

Nor are the plaintiffs aided by the dissenting view in Kluttz that "directing" means not supervision, but procuring another to do the work; for, assuming the acceptability of that definition, there is no evidence in the case before us to fit it. See, also, *Sweeney v. Spring Products Corp.,* 257 App. Div. 104, 12 N.Y.S.2d 72, aff'd. 282 N.Y. 685, 26 N.E.2d 814 (1939); *Manguso v. Thirty-Third Equities, Inc.,* 286 App. Div. 70, 142 N.Y.S.2d 25 (1955); *Blackwood v. Chemical Corn Exchange Bank,* 4 App. Div. 2d 656, 168 N.Y.S.2d 335 (1957); *De Luca v. Fehlhaber Corp.,* 38 Misc. 2d 184, 237 N.Y.S.2d 852 (1963).

We conclude that no issue of fact appears which, resolved in favor of the plaintiffs, would hold the defendant liable to the plaintiffs under 16 *Del. C.* Sec. 7701(a). Accordingly, the partial summary judgment granted by the Superior Court in favor of the defendant is affirmed.